# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

ROBERT V. SANDOVAL,

        Plaintiff,

v.                                             No. CIV 02-1401 BB/WDS

PHILIPS SEMICONDUCTORS and JOHN HALL,
individually,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of Defendants' motion for summary judgment (Doc.22). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Defendants' motion will be granted in part and denied in part.

This case arises out of a reduction in force ("RIF") undertaken by Defendant Philips in the summer of 2001. Plaintiff worked for Philips as an engineer, and claims he was selected for layoff on the basis of his race, in violation of Title VII, 42 U.S.C. § 2000e. He also claims Defendant Philips failed to follow the procedures and criteria required by its policies and procedures manual, thereby breaching a contract between Plaintiff and Philips. In addition, Plaintiff claims Defendant Hall intentionally interfered in the same contract, causing Philips to lay off Plaintiff. Finally, Plaintiff raises a new claim, not contained in the complaint or initial pretrial report, based on Defendant Philips' failure to pay Plaintiff the severance pay to which he alleges he was entitled.

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999). Instead, the nonmoving party must present facts such that under the applicable law, a reasonable jury could find in its favor. *Id.* The Court will analyze Defendants' motion under this standard.

**Title VII Claim:** In a RIF case, a plaintiff makes out a prima facie case of discriminatory discharge by introducing evidence of the following: (1) he is a member of a protected group; (2) he was doing satisfactory work; (3) he was discharged despite the adequacy of his work; and (4) he was treated less favorably than other employees. *Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998). Plaintiff has produced evidence establishing that: he is Hispanic; he had received at least an "average" performance review, scoring a 3, around the same time as the RIF; he was selected for discharge despite the adequacy of his work; and he was chosen for discharge over a non-Hispanic employee who had only been working for Philips for two months, while Plaintiff had been there for almost seven years. (Pltf. Exh. 1, Pltf. Decl.; Pltf. Exh. 2, Niemi depo., pp. 16-17; Def. Exh. D, Niemi depo., p. 18-20) This is sufficient to make a prima facie showing of discrimination in a RIF case.[1]

---

[1] Defendants attempt to argue that Plaintiff was not qualified for his position, and therefore did not establish a prima facie case, because of the relative ranking he received during the RIF process. However, the "qualified for the position" element does not incorporate the criteria the company used to decide who would be laid off. Those criteria come into play in evaluating the company's facially non-discriminatory reason for selecting Plaintiff for the RIF. Instead, being

2

The next step in the analysis of this case is to examine Philips' explanation for selecting Plaintiff to be laid off, rather than a different engineer. Philips argues that it used non-discriminatory criteria in rating and ranking its engineers, and that Plaintiff's scores during this process were such that he fell into the group selected for layoff. Philips has therefore met its burden of providing a neutral explanation for its actions. *See Beaird*, 145 F.3d at 1168. To survive summary judgment, Plaintiff must provide some evidence indicating that Philips' explanation is not true, and may therefore be a pretext for discrimination. *Id.*

One way a plaintiff may show that a RIF is pretextual is to establish that the employer failed to comply with its own RIF policy. *Id.* Philips' RIF policy in this case, or at least as much of that policy as has been provided to the Court, indicates as follows: (1) supervisors will select the candidates for the RIF based on a combination of factors, including but not limited to the presence or absence of critical skills, past performance and productivity, qualifications, and attendance or punctuality; (2) in deciding whether one employee's skills or performance was greater than another's, the supervisors would "usually" consider performance reviews, commendations, raises given the employees, and promotions; (3) if all of the above factors are essentially equal, the relative length of service of the employees "may" be considered; and (4) Philips reserved the right to vary from these guidelines in administering the RIF. (Def. Exh. A, Candelaria Affid., Exh. 4)

The actual procedure followed during this particular RIF, as explained by the participants (viewing the evidence in the light most favorable to Plaintiff), was as follows. The process that was supposed to occur was that each section head would rate that section's engineers according to a skills matrix developed by Philips, and each engineer would be given a numerical score as a result. (Def.

---

qualified for the position simply means Plaintiff was able to do the job he was performing at the time of the RIF. There is no question that Plaintiff was performing at least at an "average" level when he was laid off.

Exh. C, Setalvad depo., pp. 19-20; Pltf. Exh. 4, Rieden depo., p. 14; Pltf. Exh. 5, Peterson depo., pp. 7, 10-11)[2] A meeting (or meetings) of the section heads then took place, at which all of the engineers were ranked in order of the scores they had received, although the scores could be adjusted based on discussions that occurred between the section heads. (Setalvad depo. p. 21; Def. Exh. F, Rieden depo., pp. 10-15) In Plaintiff's case, however, his section head at the time of the RIF did not rate him or participate in the meeting at which Plaintiff and all other engineers were ranked, and was never asked for any input into the rankings. (Def. Exh. D, Niemi depo. pp. 33-34; Pltf. Exh. 3, Niemi depo., p. 37) This happened because Plaintiff's section head, as part of the RIF, was being removed from that position and transferred to a different position. (Pltf. Exh. 2, Setalvad depo. p. 30) In addition, Plaintiff's prior supervisor, Defendant Hall, did not rate or rank Plaintiff prior to the meeting and did not comment on Plaintiff's qualifications at the meeting. (Def. Exh. E, Hall depo. pp. 44-46) Defendant Hall did testify that Mr. Setalvad had already "seeded" the rankings when Hall saw the list. (Pltf. Exh. 7, p. 30) However, Mr. Setalvad indicated to the contrary, claiming the section heads ranked all the employees without his input. (Def. Exh. C, pp. 21-22)

However Plaintiff's rating actually came about, his score on the matrix used by Philips was a 20, which placed him in the bottom quarter of all the engineers rated. After the meeting Mr. Setalvad telephoned Plaintiff's section head, Mr. Niemi, and told him to choose between Plaintiff and a Mr. Smith, a non-Hispanic employee who had also received a score of 20 and was also in Mr. Niemi's group. (Def. Exh. D, Niemi depo. p. 18) Mr. Niemi recommended that Smith be retained,

---

[2]There is a factual conflict as to whether the section heads rated their members separately, before meeting with the other section heads; the overall supervisor, Setalvad, testified that the ratings and rankings were all done at the meeting of section heads, and not prior to that time. (Def. Exh. C, Setalvad depo. pp. 21-22) The section heads who were deposed, however, all testified that they were asked to rate their own section members prior to the joint meeting with other section heads. (Pltf. Exh. 4, Rieden depo. p. 14; Exh. 5, Peterson depo. p. 7; Exh. 6, Trotter depo. p. 15; Exh. 7, Hall depo. p. 27)

even though Smith had only been working at Philips for two months. Mr. Niemi did so because he thought Plaintiff was a stable employee who would not improve much, while Smith was young and would improve with training. (*Id.*, p. 19) Mr. Setalvad testified that if employees had received the same score during the rating process, Philips would tend to retain the employee who scored highest on the "growth potential" factor of the matrix. (Def. Exh. C, pp. 62-63) Smith had been given a rating of 5 for growth potential, the highest possible rating, while Plaintiff received a 3. (Def. Exh. G) Smith was retained and Plaintiff was laid off. Of the six Hispanic engineers employed by Philips at the time, Plaintiff was the only one laid off. (Def. Exh. A, Candelaria Affid. p. 3)

During the rating process and the meeting of the section heads, the employees' annual performance evaluations were not used at all. (Def. Exh. C, Setalvad depo. p. 25) Similarly, the longevity of any particular employee was not considered in deciding who should be laid off. (Pltf. Exh. 2, Setalvad depo. p. 40) Instead, the only information used was the matrix of critical skills on which Plaintiff had scored a 20.

Based on the above facts, Plaintiff claims he has made the required showing of pretext in several ways. Plaintiff argues strenuously that the failure to evaluate his prior performance or consider his seniority violated the RIF policy, thus raising a question of pretext. This argument fails for two reasons. First, the RIF policy does not require that either performance reviews or longevity be considered in deciding who should be laid off. Instead, the policy states that reviews will "usually" be considered, and longevity "may" be considered if all other factors are equal. These are permissive rather than mandatory terms, indicating Philips was not bound to apply these factors during the RIF.

Second, and perhaps more significantly, Philips reserved the right to vary from the RIF policy. A company is not required to follow its previously-stated RIF policies, so long as the change in practice is uniformly applied to all its employees. *Beaird, supra*, 145 F.3d at 1174. It is undisputed

5

that no employee's performance evaluation was used in the rating process, and no employee's seniority was a factor in the rankings. In addition to Mr. Setalvad's testimony to this effect, all section heads deposed by Plaintiff echoed his statements concerning the performance evaluations. (Def. Exhs. F, H, and I, Rieden depo. p. 19-20, Trotter depo. p. 20, Peterson depo. p. 15-16) Thus, it is undisputed that the departures from the RIF policy were applied across the board, and an inference of pretext cannot be drawn from Philips' failure to rely on prior performance evaluations or longevity in making its RIF decisions. *See Beaird*.

Plaintiff's other arguments, however, are more troubling. Plaintiff points to the fact that Philips did not follow its established procedure in assigning him the scores he received on the RIF matrix. As noted above, the section heads involved in the rating process testified that each section head was supposed to rate the members of his group, before attending the meeting of all supervisors. This did not happen with Plaintiff. Furthermore, the only two supervisors who might be expected to rate Plaintiff, Defendant Hall and Mr. Setalvad,[3] both denied having rated him at all. In addition, no other section head admitted having provided any input into Plaintiff's abilities or ranking. (Pltf. Exhs. 4, 5, Rieden depo. p. 15, Peterson depo. pp. 8, 14, 26) At this point, therefore, Plaintiff has introduced evidence that the "normal" RIF process was not used to rate Plaintiff's performance, and Defendants have not provided evidence indicating that a facially-neutral substitute process was used to arrive at Plaintiff's ranking.[4]

---

[3]Defendant Hall had supervised Plaintiff previously, and Mr. Setalvad, as the overall supervisor of the engineers, would be expected to be aware of Plaintiff's abilities.

[4]Defendants argue that Plaintiff did not depose all of the section heads who were involved in the RIF process, implying it was his burden to ferret out the information concerning who it was who might have rated Plaintiff's performance. The Court considers it sufficient that Plaintiff deposed his supervisor, his ex-supervisor, several other section heads, and Mr. Setalvad. At that point, there is no unfairness in placing the burden on Defendants, who should be in possession of the required information, to establish who rated Plaintiff.

Supreme Court and Tenth Circuit precedent makes it clear that to survive summary judgment in a Title VII case, it is sufficient for a plaintiff to establish a prima facie case, and then introduce evidence tending to show that the employer's explanation for its actions is not true. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000); *Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1135 (10th Cir. 2003). In a RIF context, as noted above, a plaintiff may show the employer's explanation is not true by establishing the employer failed to follow its own RIF policies or procedures. *See Beaird, supra; see also Brennan v. GTE Government Systems Corp.*, 150 F.3d 21, 29 (1st Cir. 1998) ("Deviation from established policy or practice may be evidence of pretext."). To summarize: Plaintiff has presented facts showing that (1) he was selected for layoff instead of a non-Hispanic employee with much less seniority, who had the same score on the rating matrix; (2) Philips did not follow its usual procedure in rating Plaintiff and assigning him his matrix score; and (3) no one at Philips acknowledges having rated Plaintiff, so there is no information as to how the score was assigned. Under *Reeves* and *Beaird*, this evidence is sufficient to resist Defendants' summary-judgment motion on the Title VII claim, despite the fact that Defendants have produced a great deal of evidence tending to show the RIF decision was not motivated by discrimination.[5] The Title VII claim will, however, be dismissed against Defendant Hall,

---

[5]The Court notes Plaintiff's submission of evidence concerning Defendant Hall's possible bias against Hispanics. This evidence has not been considered with respect to the Title VII claim, for two reasons. First, there is no evidence at this point that Defendant Hall played any role in the decision to lay off Plaintiff. As a non-decisionmaker, therefore, any bias he may have had is irrelevant to the Title VII claim. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.1994). Furthermore, Plaintiff's evidence of Defendant Hall's bias is extremely weak, consisting of examples of Hall belittling Plaintiff, asking the meaning of the Spanish derogatory term "pendejo," and making a rude comment about a "lazy Mexican" that was not directed at Plaintiff and which he did not hear. These are at most "stray comments" unrelated to the decision to lay off Plaintiff, and therefore bearing no weight in the Title VII analysis. *See id.*

7

as individuals are not subject to liability under Title VII. *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996).

**New Mexico Human Rights Act ("NMHRA") Claim:** Plaintiff admits he did not exhaust his administrative remedies with respect to this claim. He argues, however, that Defendants waived the failure-to-exhaust defense. As Plaintiff acknowledges, the New Mexico Supreme Court has held that exhaustion of remedies under the NMHRA is jurisdictional, and a district court must dismiss an NMHRA claim if exhaustion has not occurred. *Mitchell-Carr v. McLendon*, 980 P.2d 65, 70 (N.M. 1999). This claim will therefore be dismissed without prejudice.

Defendants also briefed the merits of a common-law discrimination claim. Plaintiff did not respond to Defendants' arguments concerning this claim, and the Court therefore deems the claim abandoned.

**State-Law Breach of Contract Claim:** Plaintiff maintains Philips breached a contract with him by failing to follow the RIF policy, as discussed above. Defendants' main argument in opposition to this claim is that Plaintiff's employment was "at will," that Plaintiff acknowledged he knew this, and that Plaintiff admitted at his deposition that he did not have a contract with Philips. Defendants point to a number of employment documents signed by Plaintiff indicating his employment was at will. However, the fact that a policy manual or other employment documents contain disclaimers is not dispositive of the question of whether an implied contract has been created for at least some purposes. *See McGinnis v. Honeywell, Inc.*, 791 P.2d 452, 457 (N.M. 1990) (quoting Tenth Circuit case of *Zaccardi v. Zale Corp.*, 856 F.2d 1473 (10th Cir. 1988)). Instead, the employer's norms of conduct, and employee expectations founded upon those norms, may contradict the disclaimers and lead to the conclusion that an implied contract has been formed. *See id.* These norms of conduct may be established in several ways, including a simple examination of specific language and promises

8

contained elsewhere in an employer's policies and manuals. *See id.* In other words, where one part of an employment manual claims the relationship is an at-will relationship, but another part of the manual makes promises upon which an employee would reasonably rely, an implied or even express contract may exist. *See id.* Such promises by an employer are binding regardless of whether the employee has bargained for the promises or has provided additional consideration, other than continuing to work for the employer, in exchange for those promises. *See Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 771-72 (N.M. 1993). The Court therefore cannot accept Defendants' argument that Plaintiff's admissions concerning his at-will employment status disposes of the breach-of-contract claim.

Ordinarily, the question of what constitutes an employee's reasonable expectations, based on the employer's norms of conduct and representations, is a question of fact for the jury, and is not readily amenable to resolution by summary judgment. *See Kiedrowski v. Citizens Bank*, 893 P.2d 468, 471 (N.M.App. 1995). In this case, however, Plaintiff is relying on provisions of the RIF policy that, as noted above, are not mandatory but permissive--performance evaluations will "usually" be used in RIF decisions, and longevity "may" be considered if all else is equal. (Def. Exh. 4) Also, while Plaintiff claims he had a contractual right to have his particular supervisor rate him for purposes of the RIF, the RIF policy states only that "Supervisors" will make the necessary decisions. Finally, Philips expressly reserved the right to vary from its RIF guidelines in selecting employees for layoff, based upon the facts of each situation. (Exh. 4, par. B(1)) The Court finds, therefore, that the statements in the RIF policy are not sufficiently definite and certain as to allow a reasonable expectation that they will be followed in all cases. *See Sanchez v. The New Mexican*, 738 P.2d 1321, 1324 (N.M. 1987) (affirming grant of directed verdict in favor of employer where language in employee handbook was of a non-promissory nature and was merely a declaration of employer's

general approach to the subject matter discussed). Summary judgment will be granted on the claim that Philips breached a contract by failing to follow its RIF policy.

Plaintiff has also raised a claim that Philips breached a contractual provision by refusing to pay Plaintiff severance pay in connection with the RIF. Plaintiff rests his claim on a provision of the RIF policy which states, without qualification, that "All employees reduced in force will be given severance pay, based on years of service, in accordance to the following schedule..." (Def. Exh. 4, par. D) Plaintiff was not paid his severance pay because he refused to sign a release of claims, and Philips would not pay him the severance unless he agreed to sign the release.

Defendants' main argument against this claim is that this particular breach-of-contract claim was not included in Plaintiff's complaint or the initial pretrial report. Plaintiff apparently first raised this claim in his response to the motion for summary judgment, and then recited it again in the final pretrial report (Doc. 32). Plaintiff has not yet moved to amend the complaint to attempt to add this claim. While it is true that this claim arises out of the RIF policy, as did the other breach-of-contract claim, it is clearly separate and distinct from the claim that Philips failed to follow its RIF policy in selecting Plaintiff for layoff. As such, this claim should properly be the subject of an amendment to the complaint if Plaintiff so chooses.

At this point, if the merits of the claim were to be addressed, the Court would be inclined to deny Defendants' request for summary judgment. As noted above, the RIF policy explicitly states that all employees laid off will receive severance pay. The policy says nothing about a requirement that the employees sign a release of all claims in order to receive that severance pay. There appears to be a question of fact, therefore, as to whether a reasonable employee would believe Philips made an unrestricted promise to pay severance pay to any employee laid off during the RIF. *Cf. McGinnis*, *supra* (unqualified statement in personnel manual formed express contract between employer and

10

employee as to whether employee was entitled to certain procedures before being laid off). If Plaintiff seeks to amend his complaint the merits will be a subject of inquiry.

**State-Law Interference With Contract Claim:** This claim may be summarized as follows: Defendant Hall caused Plaintiff to be selected for the RIF, by changing his last performance evaluation. The parties dispute whether an employee of a corporation can be sued for interfering with an employment contract between the corporation and a different employee. It appears that in New Mexico, the answer is yes. *Ettenson v. Burke,* 17 F.3d 440, 446-47 (N.M. App. 2000) (corporate officer was entitled to only qualified immunity for such a claim). Nevertheless, the Court will grant the motion for summary judgment because Plaintiff has presented no evidence that Defendant Hall did anything to interfere with his employment contract.[6] Plaintiff's argument that Hall changed his performance evaluation is unhelpful for two reasons: first, Hall changed the evaluation to make it more favorable to Plaintiff, not less; and second, there is no evidence that the performance evaluation played any role in the RIF process, so whatever Hall did regarding the evaluation could not have interfered with Plaintiff's employment relationship. Similarly, there is no evidence that Hall rated or ranked Plaintiff during the RIF meeting, or commented on Plaintiff's qualifications at all. Absent some evidence that Hall had any impact on the RIF decision, the Court will grant summary judgment to Defendant Hall on this claim.

---

[6]The Court notes Defendants' argument that no employment contract existed. However, even an at-will employment relationship is contractual; it is simply a contract that may be terminated at any time by either party. *See Mealand v. Eastern New Mexico Med. Center*, 33 P.3d 285, 291 (N.M. App. 2001).

**Conclusion**

Based on the foregoing, Defendants' motion for summary judgment will be granted in part and denied in part. The claims remaining for trial will be the Title VII claim against Philips, and potentially the breach-of-contract claim involving the severance pay.

**ORDER**

A Memorandum Opinion having been entered this date, it is hereby ORDERED that Defendants' motion for summary judgment (Doc. 22) be, and hereby is, GRANTED in part and DENIED in part.

Dated this 6th day of May, 2004.

_____
BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiff**:
Steven K. Sanders

**For Defendants**:
Duane C. Gilkey
Carol L. Dominguez